IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KESTERS MERCHANDISING DISPLAY
INTERNATIONAL, INC.,

    *Plaintiff,*

vs.

SURFACEQUEST, INC., SURFACEQUEST
CHICAGO, and ENGINEERED GROUP,
LLC, d/b/a SQ ORLANDO,

    *Defendants.*

Case No. 21-2300-EFM-GEB

**MEMORANDUM AND ORDER**

    Plaintiff Kesters Merchandising Display International, Inc. ("KMDI") brings this suit against Defendants Surface Quest, Inc. ("SQ"), Surface Quest Chicago ("SQ Chicago"), and Engineered Group, LLC d/b/a SQ Orlando ("SQ Orlando") alleging violation of the Lanham Act, unfair competition, and unjust enrichment. KMDI alleges that Defendants falsely represented that they were the inventor and purveyor of KMDI's "Microlite" product to deceive consumers and divert profits away from KMDI. This matter comes before the Court on Defendant SQ's Motion to Dismiss, or in the Alternative, to Sever and Transfer Venue (Doc. 15).[1] SQ asks the Court to dismiss the claims against it for lack of personal jurisdiction and improper venue, or in the

---

[1] SQ is the only Defendant moving to dismiss the claims against it. KMDI has dismissed its claims against SQ Chicago without prejudice and has moved to for default judgment against SQ Orlando.

alternative, seeks to transfer this case to the District of Minnesota under 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631. For the reasons stated below, the Court denies SQ's motion.

## I.     Factual and Procedural Background[2]

KMDI is a Kansas corporation with its principal place of business in Kansas City, Kansas. KMDI sells a material known as "Microlite." Microlite is a composite material that can be customized to create architectural elements such as soffits, fascias, displays, curves, and rings. Microlite is unique because it is light-weight, easy to install, and able to be formed to any shape, size, or finish. It is a fully encapsulated material, meaning that KMDI only manufactures the structural aspect of the architectural feature, not the exterior film or veneer visible to the consumer.

SQ is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. SQ manufactures and sells films and laminates that cover walls and other surfaces to make them more visually appealing for a more affordable price than wood or stone. When combined with a structural material, this film can be used to create architectural features that safely hang from ceilings and walls where a material like wood or stone could not be as readily hung.

SQ began working as an outside sales representative for KMDI in 2013, and sent its employee to KMDI's facilities in Kansas to meet with it regarding the business relationship. From 2013 to 2014, SQ acted as KMDI's representative, using Microlite samples SQ obtained from Kansas to market Microlite material to customers across the country. More specifically, SQ used its architectural films to demonstrate how the films could be applied to the Microlite to achieve the desired aesthetic result. KDMI paid SQ a commission for each sale made from KMDI's

---

[2] The facts are taken from KMDI's Complaint, the affidavit attached SQ's Motion to Dismiss, and the affidavit attached to KMDI's response to SQ's Motion to Dismiss.

checking account located in Kansas. In March of 2014, KMDI wished to enter a more formal, exclusive partnership with SQ. When KMDI communicated those wishes, SQ stopped communicating with it. KMDI continued to order SQ's film, however, which was delivered to KMDI's facilities in Kansas until 2017.

SQ has since begun selling its lightweight architectural product—known as the "RevBeam" product. RevBeam contains an interior structural material that is different from Microlite. In 2020, KMDI learned that SQ improperly promoted its RevBeam product by misrepresenting to customers and the public that KDMI's Microlite was actually SQ's product. For example, KMDI alleges that:

- SQ placed its sticker on two Microlite samples and gave the samples to two California companies. A representative of one of these companies stated that SQ "held itself as the 'inventor and purveyor' of the Microlite sample."

- SQ published on its website photographs of ceiling beams fabricated and installed by KMDI, with "misleading posts that attribute credit for KMDI's work to SQ."

- SQ posted its RevBeam product launch video on its website, which contains footage of a retail project known to have been completed by KMDI, but is falsely advertised to be SQ's RevBeam product.

KMDI alleges that it suffered substantial, irreparable harm, as well as lost millions of dollars in business revenue, when SQ stole its business and interfered with KMDI's customer relationships. Specifically, SQ entered into a contract with Hy-Vee, a retail grocer based in Kansas and Missouri, to install RevBeam at its stores. KMDI submitted a proposal for the 2020 Hy-Vee remodel project but did not receive the business.

The Complaint alleges that the Court has personal jurisdiction because "the transaction giving rise to the claims herein originated at KMDI's principal place of business in Wyandotte County, Kansas, and because the harm suffered by KMDI is most felt in Kansas, where its business bank accounts are located." SQ has never sold or attempted to sell its RevBeam product in Kansas. Although SQ maintains a website on which the pictures at issue were published, the website does not allow a customer to purchase its products directly. At most, persons can submit a generic form or email to schedule a project consultation or product presentation.

KMDI asserts three claims against SQ based on SQ's alleged misconduct. The first claim is a false misrepresentation claim under the Lanham Act, specifically 15 U.S.C. § 1125. The second claim is a state law unfair competition claim, and the third claim is a state law unjust enrichment claim. SQ has now moved to dismiss the Complaint.

## II. Legal Standard

### A. Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[3] In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[4] Once the plaintiff makes a prima facie showing, the defendant "must present a compelling case

---

[3] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[4] *Id.*

demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[5]

The court views the allegations in the complaint as true if they are uncontroverted by the defendant's affidavits.[6] "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7] "However, only the well pled facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[8] "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."[9]

**B.     Motion to Dismiss for Improper Venue**

Under Rule 12(b)(3), a defendant may request dismissal for improper venue. Venue is proper in Kansas under 28 U.S.C. § 1391(b) only when (1) all defendants are residents of Kansas, (2) a substantial part of the events giving rise to the action occurred in Kansas, or (3) there is no other venue in which the action could have been brought.

When a defendant challenges venue, the plaintiff bears the burden of showing that venue is proper.[10] In a motion to dismiss for improper venue, the plaintiff is only required to make a

---

[5] *Id*. at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[6] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[7] *Id.* at 1505 (internal quotations and citations omitted).

[8] *Id*. (citations omitted).

[9] *Id*. at 1508 (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

[10] *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000).

prima facie showing that venue is proper to avoid dismissal; this is the same standard as a motion to dismiss for lack of personal jurisdiction.[11]

**C.      Alternative Motion to Transfer Venue**

Transfer of venue is governed by 28 U.S.C. § 1404 or § 1406. Which section governs depends on whether the plaintiff's choice of venue is proper. If the original venue is proper, § 1404 is the governing section; if venue is improper, § 1406 governs.[12]

The relevant portion of § 1404 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."[13] Unless the balance of interests "is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."[14]

The relevant portion of § 1406 states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[15] The phrase "if it is in the interest of justice" grants the Court discretion in deciding to dismiss or transfer an action.

---

[11] *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d. 1051, 1058 (D. Kan. 2006) (citations omitted).

[12] *Marks v. Otis Elevator Co.*, 2017 WL 2618848, at *2 (D. Kan. 2017).

[13] 28 U.S.C. § 1404(a).

[14] *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006).

[15] *Id*. § 1406(a).

### III. Analysis

SQ moves the Court to dismiss the Complaint against it for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3). In the alternative, SQ asks the Court to sever the claims against it under Rule 21 and transfer venue to the District of Minnesota under 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631.

### A. The Court has personal jurisdiction over SQ.

The Court's assertion of personal jurisdiction over SQ is determined by the law of the forum state.[16] To establish personal jurisdiction over SQ, KMDI must make two showings: (1) that jurisdiction is legitimate under the state's long-arm statute, and (2) that jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.[17]

KMDI spends much of its response arguing that personal jurisdiction is proper under the Kansas long-arm statute. This argument, however, is irrelevant. The Kansas Supreme Court has interpreted Kansas' long-arm statute to extend jurisdiction to the fullest extent allowed by the Due

---

[16] KMDI asserts subject matter jurisdiction under 28 U.S.C. § 1331—federal question jurisdiction—and 28 U.S.C. § 1332—diversity jurisdiction. In a federal question case, "a court can assert personal jurisdiction over a defendant if: (1) the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant; and (2) the exercise of jurisdiction comports with due process." *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1200-01 (D. Kan. 2016) (citation omitted). The Lanham Act does not provide for nationwide service of process and therefore Fed. R. Civ. P. 4(k)(1)(A) governs service. *Id*. at 1201 (citations omitted). Under this rule, the law of the forum state governs. *Id*. (citing Fed. R. Civ. P. 4(k)(1)). In a diversity case, the law of the forum state determines whether a court can assert personal jurisdiction over a defendant. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). Therefore, under either basis for subject matter jurisdiction, the Court must apply Kansas law.

[17] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (citation omitted); *Kuenzle*, 102 F.3d at 455.

Process Clause of the Fourteenth Amendment.[18] Thus, the Court need not conduct a statutory analysis and may proceed directly to the due process analysis.[19]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.' "[20] "Due process requires both that the defendant 'purposefully established minimum contacts with the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.' "[21] "[A]n out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[22]

*1. General Jurisdiction*

General jurisdiction allows the Court to "exercise jurisdiction over an out-of-state party for all purposes."[23] "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."[24] Here, KMDI does not argue that the Court has general personal jurisdiction over SQ, and the Court does not otherwise find a

---

[18] *Merriman v. Crompton Corp.*, 282 Kan. 433, 146 P.3d 162, 179 (2006) (citation omitted).

[19] *Leichty v. Bethel Coll.*, 2019 WL 5549167, at *13 (D. Kan. 2019) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).

[20] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

[21] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King*, 471 U.S. at 476).

[22] *Id.* (citations omitted).

[23] *Id.*

[24] *Id.* at 904 (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004)).

basis for exerting general jurisdiction over SQ exists. Therefore, the Court will limit its analysis to the issue of specific personal jurisdiction.

### 2. *Specific Jurisdiction*

Specific jurisdiction allows the Court to exercise jurisdiction over an out-of-state defendant "only if the cause of action relates to the party's contacts with the forum state."[25] A court may exercise specific jurisdiction if (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state and (2) the plaintiff's injuries 'arise out of' the defendant's purposefully directed activities.[26]

#### a. Purposeful Direction

The "purposeful direction" requirement ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."[27] Indeed, the relationship between the defendant and the forum must arise out of contacts that the "*defendant himself*" created with the forum—i.e., the analysis must focus on "the defendant's contacts with the forum" and not merely the defendant's contacts "with persons who reside there."[28]

A plaintiff may employ several frameworks to satisfy the "purposeful direction" requirement.[29] Here, KMDI relies on the "effects test" established by the U.S. Supreme Court in

---

[25] *Id*.

[26] *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

[27] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 475).

[28] *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (emphasis in original).

[29] *See, e.g.*, *Old Republic*, 877 F.3d at 905.

*Calder v. Jones*.[30]  In *Calder*, the Court found specific jurisdiction over Florida defendants that published an allegedly libelous article about a California resident.[31]  The defendants had numerous contacts with California: they relied on phone calls with California sources to obtain information for the article, they wrote about the plaintiff's activities in California, they caused reputational injury in California by publishing an article widely circulated in California, and the brunt of the injury was suffered in California.[32]  Thus, California was "the focal point both of the story and of the harm suffered."[33]

The *Calder* effects test allows a plaintiff to satisfy the "purposeful direction" requirement "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state."[34]  The Tenth Circuit has summarized this test to require "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state."[35]  This test requires "more than simply harm suffered by a plaintiff who resides in the forum state."[36]  Indeed, "the plaintiff cannot be the only link between the defendant and the forum."[37]  Rather, the defendant's conduct must connect the

---

[30] 465 U.S. 783 (1984).

[31] *Id*. at 791.

[32] *Id*. at 788-89.

[33] *Id*. at 789.

[34] *Old Republic*, 877 F.3d at 907 (citing *Calder*, 465 U.S. at 790-91) (emphasis in original).

[35] *Id*. (quoting *Dudnikov*, 514 F.3d at 1072).

[36] *Id*. at 917 (citing *Walden*, 571 U.S. at 290).

[37] *Id*. (quoting *Walden*, 571 U.S. at 285).

defendant "to the forum in a meaningful way."[38] "[M]ere foreseeability of causing an injury in the forum state is . . . insufficient."[39]

SQ argues that the effects test is not satisfied here because KMDI has not alleged any facts showing SQ aimed its conduct at the forum state. In the Tenth Circuit, "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed."[40] SQ points out that there is nothing on its website that references KMDI, Microlite, or Kansas. Thus, SQ argues that there is no evidence it purposefully directed its activities toward Kansas.

The Court agrees that SQ's website does not show SQ expressly aimed its conduct toward Kansas. Nothing on the website is specifically directed toward Kansas, and potential Kansas customers cannot purchase SQ's Revbeam product directly from the site. But the content of SQ's website is not the only fact relevant to the jurisdictional analysis. KMDI has alleged the following contacts between SQ and Kansas: (1) SQ entered into a business relationship with KMDI, a Kansas company, in which it sold KMDI's Microlite product and delivered architectural film to KMDI's facilities in Kansas; (2) SQ sent its employee to KMDI's facilities in Kansas in 2013 to discuss KMDI's Microlite products, (3) SQ obtained numerous Kansas-manufactured Microlite samples, (4) SQ received commissions from its sale of KMDI's Microlite product from KMDI's Kansas checking account; and (5) SQ partnered with Hy-Vee, a previous KMDI customer, for a remodel

---

[38] *Walden*, 571 U.S. at 290.

[39] *Dudnikov*, 514 F.3d at 1077.

[40] *Shrader*, 633 F.3d at 1244.

project for Hy-Vee's grocery stores in Missouri and Kansas thereby diverting business away from KMDI .

These allegations are sufficient to satisfy the effects test. KMDI alleges that SQ (1) committed intentional action by falsely representing to SQ's customers that KMDI's Microlite samples and manufactured products were its own products; (2) expressly aimed their conduct at the forum state by meeting with KMDI at its facilities in Kansas, obtaining Kansas manufactured samples of the Microlite products, and receiving commission checks from KMDI's bank in Kansas; and (3) had knowledge that the brunt of the injury would be felt in the forum state where KMDI operates its business. With these allegations, KMDI has established that SQ "purposefully directed" activities in Kansas that caused injury to a Kansas resident, thereby subjecting them to specific personal jurisdiction in this forum.[41]

        b.        Nexus Requirement

The Court next must analyze whether KMDI's injuries "arise out of" SQ's contacts with Kansas. The Tenth Circuit applies two tests when determining whether the plaintiff has sufficiently alleged a nexus between the contacts and the injuries alleged: (1) "but-for" causation or (2) proximate cause.[42] Under the "but-for" causation test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific

---

[41] *See, e.g., Inspired by Design*, 200 F. Supp. 3d at 1206 (finding purposeful direction where the defendants, who resided in California, purchased over the internet one of the plaintiff's products in Kansas so that they could copy it and sell their own product on Etsy knowing that the brunt of the injury would be felt in Kansas, where the plaintiff operates it business); *Dudnikov*, 514 F.3d at 1076-77 (holding that the defendants were subject to personal jurisdiction in Colorado where the plaintiff alleged that the "expressly aimed" conduct was aimed toward Colorado); *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1179 (D. Utah 2016) (finding that the defendant purposefully availed itself of the Utah forum where the defendant copied photographs from a Utah company's website and used the photographs to create derivative works).

[42] *Dudnikov*, 514 F.3d at 1078-79.

jurisdiction."[43] The "proximate cause" test is more restrictive and requires the courts to "examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[44] The Tenth Circuit "has declined to choose between but-for and proximate causation," but in contract actions, has "consistently applied the more-restrictive proximate-cause approach."[45]

SQ argues that there is no nexus between KMDI's injuries and SQ's contacts with Kansas because any manufacturing of the Microlite samples occurred in Kansas in 2013 and 2014, and a subsequent "passing off" of these samples to SQ' customers in California in 2020 is too attenuated. According to SQ, because KMDI is bringing a "passing off" claim under the Lanham Act, the only acts or contacts that matter in this case are the website pictures and SQ's representations about the physical samples to its customers, all of which took place on the internet or in California.

The Court, however, disagrees. Under the but-for causation test, "*any* event in the causal chain" leading to KMDI's injury supports the exercise of jurisdiction.[46] And while the proximate cause test is more restrictive, "*any* of [SQ's] contacts with the forum" that are relevant to KMDI's claim support the exercise of jurisdiction.[47] Here, Plaintiff has alleged sufficient facts to satisfy both tests. KMDI alleges that SQ, as part of its business relationship with KMDI, obtained samples of the Microlite product from Kansas and marketed these samples to customers across the country for use with its architectural films. KMDI also alleges that SQ falsely represented KMDI's

---

[43] *Id*. at 1078.

[44] *Id*. (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)).

[45] *Compania de Inversones Mercantiles, S.A. v. Grupo Cementos de Chihusaha S.A.B. de C.V.*, 970 F.3d 1269, 1285 (10th Cir. 2020) (internal quotations marks and citations omitted).

[46] *Dudnikov*, 514 F.3d at 1078 (emphasis added).

[47] *Id*. (internal quotation marks and citation omitted) (emphasis added).

Microlite samples as its own. KMDI further alleges that these false representations caused KMDI injury in the form of diverted sales. These allegations sufficiently allege that KMDI's claims arise out of SQ's conduct directed at a Kansas resident. Therefore, the Court concludes that KMDI has met its burden to show minimum contacts with Kansas to subject itself to specific personal jurisdiction in this Court.[48]

### 3. Fair Play and Substantial Justice

Even if a defendant has sufficient minimum contacts, the Court must still determine whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice."[49] The Court considers the following five factors in this analysis:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[50]

"A defendant must present a 'compelling' case that factors like these render jurisdiction unreasonable."[51] Cases "where the exercise of personal jurisdiction offends fair play and substantial justice are 'rare.' "[52]

---

[48] *See Inspired by Design*, 200 F. Supp. 3d at 1206 (finding that the plaintiff alleged sufficient facts to satisfy both the but-for and proximate cause tests when the plaintiff alleged that the defendant purposefully directed its actions towards plaintiff by selling replicas of the plaintiff's product in violation of the plaintiff's intellectual property rights; *see also Dudnikov*, 514 F.3d at 1079 (finding a sufficient nexus where the defendants' contact with Colorado and the email exchange between the parties was a but for cause of the action).

[49] *Newsome*, 722 F.3d at 1264 (citation omitted).

[50] *OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Ashahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

[51] *Compania de Inversiones Mercantiles*, 970 F.3d at 1289 (citing *Burger King*, 417 U.S. at 477).

[52] *Id*. (citations omitted).

Looking at the first factor, the burden on SQ is not significant. SQ has not provided any reason as to why this Court's exercise of personal jurisdiction would impose a substantial burden. The Court acknowledges that it may be inconvenient for SQ to defend a case in Kansas. But the Court also has concluded that "[i]t is not constitutionally unreasonable to exercise jurisdiction on [an out-of-state] defendant when Internet communications, faxes, telecommunications, and relatively inexpensive travel are available."[53]

As to the second factor, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[54] Because KMDI is a Kansas corporation, this factor supports a finding that the exercise of personal jurisdiction over SQ is reasonable.

The third, fourth, and fifth factors are neutral. As to the third factor, KMDI does not argue that it is unable to seek effective relief in another jurisdiction. As to the fourth factor, the parties have not presented information regarding whether litigating the case in this forum results in the most efficient resolution of the controversy. KMDI's witnesses are presumably located in Kansas, while SQ's witnesses are presumably located in Minnesota. Thus, this factor is neutral. Under the fifth factor, the Court is not aware of any facts establishing the shared interest of the several states in furthering fundamental substantive policies favors one forum over another.

After examining the five reasonableness factors, the Court concludes that exercising personal jurisdiction over SQ will not offend traditional notions of fair play and substantial justice.

---

[53] *Brooke Credit Corp. v. Tex. Am. Ins., Inc.*, 2007 WL 1586082, at *5 (D. Kan. 2007); see also *Toytrackerz LLC v. Koehler*, 2009 WL 1505705, at *18 (D. Kan. 2009) (stating that "[m]odern transportation and communication, an in particular the implementation of electronic case filing, noticing, and teleconferences have to some extent lessened the burden to out-of-state defendants").

[54] *OMI Holdings*, 149 F.3d at 1096 (citation omitted).

At this stage of the litigation, KMDI is only required to make a prima facie showing of jurisdiction,[55] and KMDI has met this burden.  Therefore, the Court denies SQ's motion to dismiss for lack of personal jurisdiction.

### B.     Venue is proper in this District.

SQ also seeks dismissal under Rule 12(b)(3) for improper venue.  Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  " 'A substantial part of the events' may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial."[56]

The Tenth Circuit has set forth a two-part test for reviewing challenges to venue under § 1391(b)(2).[57]  First, the Court must "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims."[58]  Second, the Court must determine "whether substantial 'events material to those claims occurred' in the forum district."[59]  This requirement is satisfied when the acts or omissions have a close nexus to the claims.[60]  The Court, however, "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim."[61]

---

[55] *Id*. at 1091 (citation omitted).

[56] *Wempe v. Sunrise Medical HHG, Inc.*, 61 F. Supp. 2d 1165, 1173 (1999) (citations omitted).

[57] *Bartile Roofs,* 618 F.3d at 1166.

[58] *Id*. (citations omitted).

[59] *Id*. (citations omitted).

[60] *Id*. (citations omitted).

[61] 17 James Wm. Moore et al., *Moore's Federal Practice* § 110.04[1] (3d ed. 2010).

Applying the Tenth Circuit's two-part test, the Court first looks at the nature of KMDI's claims and the acts or omissions underlying those claims. KMDI alleges that SQ has violated the Lanham Act through its false and misleading representations, that SQ has engaged in unfair competition, and that SQ has been unjustly enriched as a result of its actions. KMDI bases its claims on SQ's alleged misrepresentation of KMDI's Microlite product as its own, both on SQ's website and in person to SQ's customers.

Next, the Court examines whether substantial events material to KMDI's claims occurred in this District. As set forth above, KMDI alleges several events concerning the parties' relationship took place in Kansas. KMDI alleges that SQ sent its employees to Kansas in 2013 to discuss use of the Microlite product and that SQ received samples of Microlite from Kansas. KMDI further alleges that SQ has falsely represented that it is the inventor and owner of the Microlite samples that it received from KMDI. And KMDI alleges that SQ's actions caused injury to its business in Kansas. These events show a close nexus between SQ's actions and the claims.

SQ argues that venue is improper in this district because no "substantial part" of the "passing off" took place in Kansas. In support of this argument, SQ relies on the Eighth Circuit's opinion in *Woodke v. Dahm*,[62] which states that "[t]he place where the alleged passing off occurred . . . provides an obviously correct venue."[63] This Court, however, is not bound by the Eighth Circuit. And while other events giving rise to KMDI's claims occurred outside of Kansas, including the alleged passing off to which SQ refers, venue "is not limited to the district with the

---

[62] 70 F.3d 983 (8th Cir. 1995).

[63] *Id*. at 985.

*most* substantial events or omissions" and "can be appropriate in more than one district."[64] Because a substantial part of the events giving rise to KMDI's claims occurred in Kansas, venue is proper here.[65] Accordingly, the Court denies SQ's motion to dismiss for lack of venue.

## C.     Transfer to Another District Is Not Warranted.

Finally, SQ requests that the Court transfer this case to the United States District Court for the District of Minnesota. Because venue is proper, transfer of this case is governed by 28 U.S.C. § 1404. The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."[66]

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."[67] "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue."[68] The Court has broad discretion to decide a motion to transfer under § 1404(a) based on an "individualized, case-by-case consideration of convenience and fairness."[69] The Court considers the following factors when deciding to transfer an action under § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability

---

[64] *Bartile Roofs*, 618 F.3d at 1165 (quoting *Gulf Ins. v. Glasbrenner*, 417 F.3d at 353, 356 (2d Cir. 2005)).

[65] *See Inspired by Design*, 200 F. Supp. 3d at 1209 (finding that a substantial part of the events giving rise to the plaintiff's claim occurred in Kansas where the defendants purchased the plaintiff's product from the internet from Kansas and then replicated that product in California).

[66] 28 U.S.C. § 1404(a).

[67] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

[68] *Bartile Roofs*, 618 F.3d at 1167 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

[69] *Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[70]

SQ has not addressed these factors in its motion, as it argues that transfer is appropriate under a different statute—28 U.S.C § 1406(a)—and these factors are inapplicable to § 1404(a). Nevertheless, the Court finds that the factors do not favor transfer to the District of Minnesota. The location of the witnesses and sources of proof are present in both Kansas and Minnesota. Furthermore, KMDI asserts at least one claim under a federal statute, and that claim could be decided by a federal court in Kansas or Minnesota. The Court also finds persuasive the fact that KMDI chose this forum. "[U[nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[71] Accordingly, the Court finds that SQ has failed to meet its burden to warrant transferring venue under 28 U.S.C. § 1404(a). Therefore, the Court denies SQ's motion to transfer.

## V.   Conclusion

For the reasons discussed above, the Court denies SQ's motion to dismiss based on personal jurisdiction and improper venue. It also denies SQ's alternative motion to transfer venue to the District of Minnesota.

**IT IS THEREFORE ORDERED** that Defendant SurfaceQuest, Inc.'s Motion to Dismiss, or in the Alternative, to Sever and Transfer Venue (Doc. 15) is **DENIED**.

---

[70] *Id*. (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[71] *Scheidt*, 956 F.2d at 965.

**IT IS SO ORDERED**.

Dated this 11th day of May, 2022.

                                          ERIC F. MELGREN
                                        CHIEF U.S. DISTRICT JUDGE