# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KESTERS MERCHANDISING DISPLAY,
INTERNATIONAL, INC.

*Plaintiff,*

vs.                                                      Case No. 21-CV-2300-EFM

SURFACEQUEST, INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Kesters Merchandising Display International, Inc. ("KMDI") brings this suit against Defendant SurfaceQuest, Inc. ("SurfaceQuest") asserting a claim for violation of the Lanham Act and claims for unfair competition and unjust enrichment under Kansas law.  KMDI alleges that SurfaceQuest falsely represented that it was the inventor and purveyor of KMDI's "MicroLite" product to deceive consumers and divert customers from KMDI.  This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. 220 and 225).   Both parties move for summary judgment as to KMDI's Lanham Act claim.  SurfaceQuest also moves for summary judgment as to KMDI's unfair competition and unjust enrichment claims.   For the reasons explained below, the Court grants SurfaceQuest's motion and denies KMDI's motion.

## I.    Factual and Procedural Background[1]

### A.    The Parties' Relationship

KMDI manufactures and sells a product called "MicroLite," which is a lightweight construction composite material.  It can be used in a variety of lightweight architectural products and applications, such as soffits, canopies, and beams.  Once fabricated, MicroLite can be left plain or covered with paint, veneer, metal, or architectural films to achieve the customer's desired appearance.  In the vast majority of KMDI's projects, MicroLite is covered by a finish or film, which KMDI does not manufacture.  KMDI's clients range from retail, hospitality, and commercial clients to sporting venues, hotels, and casinos.

SurfaceQuest sells and installs architectural films that can cover walls and other existing surfaces to make them more visually appealing.  The films are more affordable than wood, stone, metal, leather, or other finishes.  SurfaceQuest's films can be installed on various hard, smooth, nonporous surfaces, such as MicroLite, Sintra, or Komatex.[2]  SurfaceQuest uses direct emails, social media, blogs, and its website to market its products.

For many years, KMDI purchased film from SurfaceQuest to use on its MicroLite projects.  Around 2014, the parties engaged in a joint marketing effort to sell their respective products.[3]  Pursuant to this effort, KMDI provided SurfaceQuest with MicroLite samples, product specification guides, and photographs.

---

[1] Unless otherwise noted, the facts set forth in this section are uncontroverted.

[2] The parties do not explain what Sintra or Komatex is, but based on the parties' briefs, the Court assumes that it is a substrate that can be used for architectural products and applications.

[3] The exact nature of the parties' marketing relationship is disputed.

**B.    SurfaceQuest's Develops and Markets its "RevBeam" Product**

Around 2016, SurfaceQuest decided to manufacture its own lightweight beam wrapped in SurfaceQuest film.  This beam was made with Sintra substrate and wrapped in an architectural film supplied by SurfaceQuest.  In late 2018, SurfaceQuest began a marketing campaign for its new beam utilizing the term "Rev" or "Revolutionary."  SurfaceQuest named the beam "RevBeam," and marketed it on its website, in several marketing emails, and on its social media pages.

SurfaceQuest has sold 19 beam projects.  SurfaceQuest obtained these projects independent of its website and social media advertising efforts.  In most cases, the project leads came from existing relationships with SurfaceQuest employees.

**C.    KMDI Files Suit**

At some point, KMDI reviewed SurfaceQuest's "Rev" marketing materials and discovered photographs depicting KMDI's MicroLite projects within the materials.  In November 2020, KMDI sent SurfaceQuest a cease-and-desist letter accusing SurfaceQuest of displaying KMDI's work product on its websites, blogs, and social media pages and misrepresenting KMDI's work as its own.  KMDI demanded that SurfaceQuest remove the offending images, and SurfaceQuest later advised KMDI that it did.

KMDI filed this lawsuit on July 8, 2021, asserting a claim under the Lanham Act and common law claims of unjust enrichment and unfair competition.  KMDI seeks $804,000 as lost revenue from a potential project and disgorgement of SurfaceQuest's profits, which it estimates to be $3.38 million.  KMDI also seeks a permanent injunction.

As to the Lanham Act claim, KMDI alleges that SurfaceQuest engaged in false advertising by: (1) using photographs of KMDI MicroLite projects on its website, blog, and social media pages

and falsely representing those projects as RevBeam projects; (2) publishing a RevBeam product launch video on its website, blog, and social media pages featuring KMDI MicroLite projects as RevBeam projects and falsely stating that SurfaceQuest manufactures its RevBeam in-house; (3) publishing images from a grocery store renovation on its website and in its direct emails to customers misrepresenting these as "RevBeam" projects; (4) placing a SurfaceQuest sticker on a MicroLite binder thereby falsely representing to a KMDI customer that it was the manufacturer of MicroLite; (5) putting a SurfaceQuest sticker on a MicroLite sample and representing to KMDI's customers that SurfaceQuest was the inventor and purveyor of MicroLite; and (6) allowing SurfaceQuest's Chicago dealer to publish an image of a KMDI MicroLite project without KMDI's permission to advertise a competing lightweight architectural product called "glightweight."  The Court sets forth additional facts regarding these alleged violations below.

1. *Photos from SurfaceQuest's website, blog, and social media platforms*

KMDI alleges that SurfaceQuest falsely marketed its RevBeam product on its website and social media platforms using images of KMDI's MicroLite without its permission.  The allegedly false representations include, but are not limited to, a post from SurfaceQuest's Twitter account from 2017 to 2018 advertising the RevBeam product.  The photograph in this Twitter post features KMDI MicroLite beams covered in SurfaceQuest's films.  In addition, two pages from SurfaceQuest's website contain blog posts entitled "RevBeams:  Heighten the Look of Your Retail Space" and "Ceiling Design Done Right:  Beams," and both feature photographs of beams hanging from a ceiling of a grocery store.  Like the beams featured in the Twitter post, these beams also contain MicroLite as the underlying substrate with SurfaceQuest's films covering it to give the appearance of wood.

2.      *The RevBeam product launch video*

The RevBeam product launch video was created in August 2020 to highlight the RevBeam product.  The video first posted on August 13, 2020, to SurfaceQuest's social media platforms.  One of the photographs in the video contains KMDI's MicroLite product covered with SurfaceQuest's film.  In addition, the SurfaceQuest employee featured in the video states that she is "here to introduce to you a revolutionary new beam that we manufacture at SurfaceQuest." KMDI contends that this statement is false because SurfaceQuest does not manufacture the beam in-house.  SurfaceQuest claims that the video was opened and viewed only a handful of times.  No customer leads or beam projects were obtained from the video.

3.      *Grocery store renovation photographs*

KMDI alleges that SurfaceQuest published images of a grocery store renovation that contains false representations.  One of the images shows a trellis system hanging from a grocery store ceiling, and the caption accompanying the picture states that the store "chose a lightweight, interlocking beam system to feature the products within their liquor and pet supply departments." KMDI claims that the trellis system was a real wood beam system, but SurfaceQuest disputes this allegation.  It is undisputed, however, that SurfaceQuest did supply architectural films for beams at some point in the renovation project.

4.      *KMDI project binder and MicroLite product samples*

In 2006, SurfaceQuest employee Marc Roth met with a prospective customer—RDC Studio 111 Architects.  Roth introduced RDC Studio 111 Architects's resource manager, William McLaughlin, to KMDI's MicroLite material and gave him a "MicroLite" binder.  KMDI claims that SurfaceQuest wrongfully placed its sticker on the cover page of the binder, attempting to represent that it was the manufacturer of MicroLite.  However, as SurfaceQuest points out, the

cover page also includes the KMDI and MicroLite logos, and additional pages within the binder identify MicroLite as a KMDI project.

KMDI also alleges that SurfaceQuest placed its sticker on a curved 8" x 8" sample of MicroLite and gave it to RDC Studio 111 Architects and another prospective customer, falsely representing that MicroLite was SurfaceQuest's product.  KMDI, however, has not produced a MicroLite sample with a SurfaceQuest sticker on it during discovery.

      *5.*      *2014 SurfaceQuest Chicago Website*

In 2014, a KMDI employee, Barry Lakey, emailed an employee of SurfaceQuest's Chicago affiliate informing him that the SurfaceQuest Chicago website featured images of KMDI's MicroLite, without KMDI's permission, to advertise a competing "glightweight" product.  KMDI demanded the images be removed, and they were.

The parties have now filed cross-motions for summary judgment.  KMDI seeks partial summary judgment on its Lanham Act claim.  SurfaceQuest seeks summary judgment on each of KMDI's claims.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[4]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

To prevail on a motion for summary judgment on a claim upon which the moving party bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[6]  Conversely, to prevail on a claim on which the movant does not bear the burden of proof at trial, the "movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[7]  The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[8]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]  The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[10]

Where, as here, the parties file cross-motions for summary judgment, the Court will consider them separately.[11]  "[T]he denial of one does not require the grant of another."[12]  But where the cross motions overlap, the Court may permissibly address the legal arguments together.[13]  Each motion is viewed in the light most favorable to the nonmoving party.[14]

---

[6] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[7] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[11] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citation omitted).

[12] *Id.*

[13] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

[14] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

### III.   Analysis

**A.   KMDI's Lanham Act Claim**

KMDI contends that SurfaceQuest's conduct violates 15 U.S.C. § 1125(a), which corresponds to § 43(a) of the Lanham Act.  That section provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[15]

Subsection (a)(1)(A) creates a cause of action for infringement of an unregistered mark and false designation of origin, which is also referred to as "passing off," or the opposite, "reverse passing off."[16]  "Passing off occurs 'when a producer misrepresents his own goods or services as someone else's,' and reverse passing off occurs when a 'producer misrepresents someone else's

---

[15] 15 U.S.C. § 1125(a)(1)(A) and (B).

[16] *Warner Bros. Ent. Inc. v. Loyd*, 2023 WL 5727468, at *70 (D.N.M. Sept. 5, 2023) (*citing Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003)).

goods or services as his own.'"[17]   Subsection (a)(1)(B) creates a cause of action for false advertising.[18]

At the outset, the Court must address the type of claims KMDI is asserting under § 43(a)(1). In the Pretrial Order, KMDI vaguely asserts that SurfaceQuest's actions violate § 43(a)(1), without specifying whether KMDI is bringing a reverse passing off claim, a false advertising claim, or both.   SurfaceQuest, who filed its Motion for Summary Judgment first, addressed KMDI's allegations in the context of a false advertising claim.   KMDI did not object to this characterization in its response.   But, in its own Motion for Partial Summary Judgment, KDMI briefly states that SurfaceQuest's use of the photos on its website, social media platforms, and in the product launch video constitutes reverse passing off.   It then argues that SurfaceQuest's allegedly remaining bad acts constitute false advertising.

Despite KMDI's ambiguous treatment of its claim, the Court will only consider the allegations in the context of a false advertising claim.   KMDI did not set forth the elements of a reverse passing off claim or analyze the evidence in the context of such a claim.   More importantly, KMDI's allegations all arise from SurfaceQuest's advertisement or promotion of its products, making false advertising, and not reverse passing off, the appropriate cause of action.

To prevail on a false advertising claim, a plaintiff must prove: (1) the defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;" (2) the defendant's "misrepresentation was material, in that it was likely to influence the purchasing decision;" (3) the "misrepresentation actually deceived or

---

[17] *Id*. (citing *Dastar*, 539 U.S. at 27 n.1).

[18] *Id*. (citation omitted).

had the tendency to deceive a substantial segment of its audience;" (4) the defendant "placed the false or misleading statement in interstate commerce;" and (5) the plaintiff "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products."[19]

As discussed in more detail below, KMDI's false advertising claim fails as to every alleged violation because KMDI has not met its burden to show a genuine issue of material fact as to whether it was injured because of SurfaceQuest's conduct. Although this determination eliminates KMDI's entire Lanham Act claim, the Court also considers SurfaceQuest's alternative arguments for summary judgment regarding KMDI's allegations as to the project binder, product samples, and 2014 SurfaceQuest Chicago website and concludes that summary judgment is warranted on these alternative bases as well.[20]

      *1.    KMDI's false advertising claim fails as to each of SurfaceQuest's alleged violations because KMDI does not offer any evidence that it was injured by SurfaceQuest's advertisements.*

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff."[21] In other words, "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business

---

[19] *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643-44 (10th Cir. 2022) (internal quotation marks and citations omitted).

[20] The Court declines to address SurfacQuest's alternative arguments for summary judgment regarding KMDI's allegations as to SurfaceQuest's website and social medial platforms, the product launch video, and the grocery store renovation.

[21] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

reputation proximately caused by the defendant's misrepresentations."[22]  Mere speculation of harm is not sufficient at the summary judgment stage.[23]  Instead, the plaintiff "must provide evidence from which a reasonable jury could conclude that an injury to [the plaintiff] has occurred."[24]

SurfaceQuest contends that it is entitled to summary judgment on KMDI's false advertising claim because KMDI has not adduced any evidence of injury or damages caused by SurfaceQuest's allegedly false marketing.  KMDI asserts that it is not required to produce evidence of injury because it is entitled to a "presumption of injury."

The "presumption of injury" was recently adopted by the Tenth Circuit in *Vitamins Online, Inc. v. Heartwise, Inc*.[25]  In recognizing the presumption's applicability, the Tenth Circuit explained that the presumption originated in the Second Circuit where that court "concluded that an injury could be presumed when a defendant engages in comparative advertising—i.e., when a defendant uses a false advertisement to compare its product to the plaintiff's product."[26]  "The Second Circuit reasoned that this act of false comparative advertising deprives a plaintiff 'of a legitimate competitive advantage and reduced consumers' incentive to select' the plaintiff's

---

[22] *Id*. at 140; *see also Vitamins Online*, 71 F.4th 1222, 1238 (10th Cir. 2023) ("[A] plaintiff bringing suit under § 1125(a) of the Lanham Act must prove a 'causal connection' between the defendant's false advertising and the plaintiff's injuries.") (citation omitted).

[23] *Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238, 1243 (10th Cir. 2022) (citation omitted).

[24] *Id*. (citation omitted).

[25] *See Vitamins Online*, 71 F.4th at 1239 n.5.  Although the Tenth Circuit discussed the presumption of injury in unpublished opinions, *Vitamins Online* is the first published case in which the Tenth Circuit adopted it.

[26] *Id*. at 1239 (citing *McNeilab, Inc. v. Am. Home Prod. Corp*., 848 F.2d 34, 38 (2d Cir. 1988)).

product."[27]  The presumption evolved within the Second Circuit, such that, in that circuit, it does not require direct comparison but does require a "sparsely populated" market.[28]

After finding the Second Circuit's limited application of the presumption "sensible," the Tenth Circuit held that the presumption of injury applies "once a plaintiff has proven that the defendant has falsely and materially inflated the value of its product (or deflated the value of the plaintiff's product), and that the plaintiff and defendant are the only two significant participants in a market or submarket."[29]  The Tenth Circuit explained that the presumption follows from basic logic:  "if A and B are the only two products occupying a market or submarket, and if the producer of product B fraudulently represents its product as better than A, then it can be presumed that at least some consumers will choose product B over A in reliance on that false advertising, thereby depriving the producer of A of some sales."[30]  The Tenth Circuit further explained that applicability of the presumption "turns primarily on the scope and occupancy of the market."[31]

"Once the relevant market has been defined and determined to be essentially a two-player market, the presumption of injury can be applicable."[32]  The Tenth Circuit cautioned, however, that there are "two important caveats" to the presumption.[33]  "First, this presumption is merely a presumption that the defendant has caused an injury; the degree of injury may have to be

---

[27] *Id*. (quoting *McNeilab*, 848 F.2d at 38).

[28] *Id*. at 1239 (quoting *Church & Dwight Co. v. SPD Swiss Precision Diagnostics*, 843 F.3d 48, 72 n.12 (2d Cir. 2016))

[29] *Id*. at 1240.

[30] *Id*.

[31] *Id*.

[32] *Id*. at 1241.

[33] *Id*.

considered as a separate issue to be later determined when remedies are addressed."[34]   And, "[s]econd, because this is merely a rebuttable presumption, a defendant must be given the chance to rebut the presumption once it is found to be applicable."[35]   According to the Tenth Circuit, these caveats "are important guardrails against a finding of a 'speculative' injury."[36]

KMDI argues that the presumption applies in this case because SurfaceQuest engaged in false and comparative advertising and because SurfaceQuest and KMDI are obvious competitors in a sparsely populated market.   The Court has not addressed whether SurfaceQuest's advertisements are false.   Even if they were, however, KMDI's arguments are not persuasive.

First, SurfaceQuest's advertisements are not comparative because they do not mention KMDI's MicroLite product by name.[37]   Second, the applicable standard is not whether KMDI and SurfaceQuest are obvious competitors in a "sparsely populated" market.   This is the Second Circuit's standard.   In contrast, the Tenth Circuit requires a two-player market.   And, KMDI does not come forward with evidence from which a reasonable jury could conclude that SurfaceQuest and KMDI are the only two players in the market.

To determine whether there is a two-player market, the Tenth Circuit considers anti-trust case law to be instructive.[38]   According to this law, "the boundaries of a product market are 'defined by cross-elasticity of demand, an economic measure of the substitutability of two

---

[34] *Id*. (citation omitted).

[35] *Id*. (citation omitted).

[36] *Id*. (quoting *McNeilab*, 848 F.2d at 38).

[37] *See id*. at 1239 (citing *Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57, 62 (2d Cir. 1992) for the proposition that "a comparative advertisement is one 'which mentions [the] plaintiff's product by name'").

[38] *Id*. at 1240.

products.'"[39]  "The degree of substitutability turns on sensitivity of demand based on price changes for the other item."[40]  The Tenth Circuit noted that even when products exist in the same market, "a subset of products may exist within a distinct submarket."[41]  The submarkets "may be determined by examining . . . industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production features, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."[42]

Here, KMDI offers no evidence regarding the cross-elasticity of demand of KMDI's and SurfaceQuest's lightweight architectural products.  Instead, KMDI points to the following as evidence of the relevant market:  (1) KMDI is the "Gold Standard" in the market; (2) KMDI's MicroLite is specified in contract documents to be used by companies on projects; (3) SurfaceQuest used the same PVC material as KMDI to develop its lightweight products rather that the materials used by alleged competitors; (4) SurfaceQuest used pictures of KMDI's products in its advertising and not those of the alleged competitors; and (5) SurfaceQuest placed their stickers on KMDI's marketing materials and not on the marketing materials of other alleged competitors.

Although this evidence shows that KMDI and SurfaceQuest are competitors, it does not establish that they are the only two players in the market.  In fact, some of this evidence suggests otherwise.  KMDI proclaims that MicroLite is the "gold standard."  But this description is premised on a multi-player market.  KMDI's customer described MicroLite as the "gold standard" after he

---

[39] *Id*. (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 762 F.3d 1114, 1120 (10th Cir. 2014)).

[40] *Id*.

[41] *Id*.

[42] *Id*. (quoting *Brown Shoe Co. v. United States*, 730 U.S. 294, 325 (1962)).

was asked to compare it to other substrates that can accept architectural film.  The question alone indicates that the market consists of more than just KMDI and SurfaceQuest.

SurfaceQuest presents evidence that the market for light-weight architectural elements consists of multiple companies.  It points out that KMDI's owner, William Kester, named three competitors to KMDI in his deposition.  And one of SurfaceQuest's customers named at least five companies that KMDI competes with in the market.   KMDI attempts to distinguish these competitors by arguing that they do not offer a similarly manufactured product and that they do not target the same customers.  According to KMDI, these companies' substrates are not made from PVC, they are not available in a Class A fire rating, and they do not serve the same customers as KMDI and SurfaceQuest.  But, KMDI produces no evidence in support of these assertions.  It is KMDI's burden to show that the market consists of only two players, and it has not come forward with sufficient evidence creating a genuine issue of material fact as to this requirement.  Therefore, the Court cannot apply the presumption of injury in this instance.

Because the presumption of injury is not applicable, KMDI must adduce evidence showing that it suffered economic or reputational injury flowing directly from SurfaceQuest's deceptive advertising.  KMDI does not offer any such evidence, either in its Motion for Partial Summary Judgment or in its response to SurfaceQuest's Motion for Summary Judgment.  Therefore, the Court grants summary judgment in SurfaceQuest's favor as to KMDI's Lanham Act claim.

*2.     KMDI's claim as to the product samples and project binder also fails because KMDI does not offer evidence that they constitute actionable "commercial advertising or promotion."*

In the Pretrial Order, KMDI alleges that SurfaceQuest placed its own sticker on a MicroLite curved 8x8 sample and falsely represented to two customers that the sample was SurfaceQuest's product.  KMDI also alleges that SurfaceQuest wrongfully placed a SurfaceQuest sticker on a

KMDI marketing binder and that SurfaceQuest gave the binder to one of KMDI's customers. SurfaceQuest argues that KMDI's false advertising claim as to these allegations fails to survive summary judgment for a second, alternative reason: KMDI does not offer evidence that SurfaceQuest widely disseminated these allegedly false representations such that they constituted commercial advertising or promotion violating the Lanham Act.

To qualify as "commercial advertising or promotion" for false advertising purposes, "a representation 'must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.'"[43]   In *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*,[44] the Tenth Circuit recognized that "the extent of distribution necessary to constitute commercial advertising or promotion in a particular case may be an elastic factor, so that a relatively modest amount of activity may be sufficient in the context of a particular case."[45] Nevertheless, the Tenth Circuit held that "these terms by their plain, everyday meaning connote *some* level of *public* dissemination of information."[46]  Other district courts within the Tenth Circuit have construed this holding to mean that "to constitute an actionable advertising or promotional campaign, a dissemination of information must reach some numerically-significant quantity of actual or potential customers of the parties' products."[47]

---

[43] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 507 F. Supp. 3d 1289, 1377 (D. Kan. 2020), *aff'd sub nom. In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959 (10th Cir. 2022) (quoting *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000)).

[44] 275 F.3d 996 (10th Cir. 2002).

[45] *Id.* at 1005.

[46] *Id*.  (citation omitted).

[47] *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1175 (D. Colo. 2015); *see also Vivint, Inc. v. NorthStar Alarm Servs., LLC*, 2019 WL 1098986, at *9 (D. Utah Mar. 8, 2019) ("[I]t is clear from *Sports Unlimited* . . . that there must be some statistical analysis of the number of alleged incidents in comparison to the relevant market.")

Here, KMDI does not offer any evidence that SurfaceQuest distributed the product samples or the project binder beyond the limited instances noted above.  Thus, there is no evidence SurfaceQuest disseminated these products to a statistically significant number of consumers.  Indeed, SurfaceQuest's alleged distribution is more of an isolated incident rather public dissemination.[48]   Therefore, KDMI does not present a triable issue of fact regarding the "commercial advertising" requirement necessary to support a false advertising claim.  The Court grants summary judgment against KMDI's false advertising claim as to the product samples and project binder for this alternative reason.

3.     *KMDI's claim as to the 2014 SurfaceQuest Chicago website also fails because KMDI has not shown the advertisement was false or misleading.*

KMDI alleges that SurfaceQuest published images in 2014 on the SurfaceQuest Chicago website of KMDI's MicroLite product without KMDI's permission to advertise a competing "glightweight" product.  SurfaceQuest also seeks summary judgment on this claim for a second, alternative reason:  KMDI does not produce any evidence to show that the advertisement was false or misleading.[49]

To prove that a representation was false or misleading, a plaintiff must show that the representation "was either 'literally false, either on its face or by necessary implication' or that it was 'literally true but likely to mislead or confuse consumers.'"[50]   Here, KMDI does not come

---

[48] *See Garland Co. Inc. v. Ecology Roof Sys. Corp.*, 895 F. Supp. 274, 279 (D. Kan. 1995) (finding no indication that Congress intended the Lanham Act to cover "every isolated alleged misrepresentation made to a potential customer by a business competitor.").

[49] SurfaceQuest also argues that KMDI's claim as to the web page advertisement is barred by the statute of limitations and because SurfaceQuest's independent dealer displayed the advertisement, not SurfaceQuest.  The Court declines to address these arguments because it is granting summary judgment on two alternative bases.

[50] *Vitamins Online*, 71 F. 4th at 1235 (quoting *Zoller Laby's, LLC v. NBTY, Inc.*, 111 F. App'x. 978, 982 (10th Cir. 2004)).

forward with sufficient evidence creating a genuine issue of material fact as to whether the image was false or misleading.  KMDI does not produce a copy of the image as featured on the website.  Nor does it produce any evidence explaining what "glightweight" is or why it may be a competing product.  The only evidence KMDI relies upon in support of this claim is a series of emails from a former KMDI employee, Barry Lakey, to a SurfaceQuest employee discussing how the SurfaceQuest Chicago website contained images of a MicroLite project.  These emails, however, are inadmissible hearsay because KMDI is offering them to establish the truth of the matter asserted.    And,  inadmissible  hearsay  cannot  defeat  a  motion  for  summary  judgment.[51]  Accordingly, the Court grants summary judgment to SurfaceQuest as to KMDI's claim that SurfaceQuest Chicago's webpage in 2014 constitutes false advertising.

**B.**     **Unfair Competition and Unjust Enrichment Claims**

KMDI asserts claims of unfair competition and unjust enrichment under Kansas law.  SurfaceQuest seeks summary judgment on KMDI's unfair competition claim on the basis that (1) Kansas law does not recognize a common law cause of action in the context of KMDI's claims; (2) the claim fails for the same reasons KMDI's Lanham Act claim fails; and (3) the claim is time-barred to the extent it relies on conduct occurring before June 11, 2018.  As to KMDI's unjust enrichment claim, Surface Quest seeks summary judgment on the basis that KMDI cannot produce evidence satisfying the elements of such claim.

---

[51] *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (stating that on summary judgment evidence need not be submitted "in a form that would be admissible at trial," but "the content or substance of evidence must be admissible." (internal quotation marks and citation omitted)).  The Court also notes that KMDI did not identify Barry Lakey as a potential witness in its Rule 26 disclosures or provide SurfaceQuest his contact information.

KMDI does not respond to SurfaceQuest's arguments in its response brief.  This lack of response is sufficient for the Court to grant summary judgment against KMDI.[52]  Accordingly, the Court concludes that KDMI abandoned its claims for unfair competition and unjust enrichment and grants SurfaceQuest's Motion for Summary Judgment as to these claims.

## IV.    Conclusion

None of KMDI's claims survive summary judgment.  KMDI's Lanham Act claim fails in its entirety because KMDI does not offer any evidence creating a genuine issue of material fact as to whether it was injured a result of SurfaceQuest's advertisements.  KMDI's Lanham Act claim as to the project binder, product samples, and the SurfaceQuest Chicago website image fail for additional, alternative reasons.  KMDI does not offer evidence that the project binder and product samples were sufficiently disseminated to constitute "commercial advertising or promotion."  And, KMDI does not offer evidence that the SurfaceQuest Chicago website image was false or misleading.  As to KDMI's unfair competition and unjust enrichment claims, the Court concludes that these are abandoned.  Therefore, the Court grants SurfaceQuest's Motion for Summary Judgment and denies KMDI's Motion for Partial Summary Judgment.

**IT IS THEREFORE ORDERED** that SurfaceQuest's Motion for Summary Judgment (Doc. 220) is **GRANTED**.

**IT IS FURTHER ORDERED** that KMDI's Motion for Partial Summary Judgment (Doc. 225) is **DENIED**.

---

[52] *See Escalante v. LifePoint Hosp. Inc.*, 2019 WL 2743910, at *5 (D. Kan. July 1, 2019) ("Plaintiffs do not respond to Defendant's argument in favor of summary judgment on this claim . . . Plaintiffs' lack of response to this argument is basis for summary judgment alone.") (citing *Hinsdale v. City of Liberal*, 19 F. App'x 749, 768-69 (10th Cir. 2001)).

**IT IS SO ORDERED**.

This case is closed.

Dated this 15th day of July, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE